**United States Bankruptcy Court**
**Northern District of Illinois - Eastern Division**

| | |
|---|---|
| **In re:** ) | Chapter 13 |
| ) | |
| Sabrina Shafer, ) | Case No. 24-07714 |
| ) | |
| Debtor. ) | Hon. Deborah L. Thorne |
| ) | |

## REPLY OF SKYLINE ADVANCED TECHNOLOGY SERVICES IN SUPPORT OF ITS MOTION TO OBTAIN DISCOVERY FROM ALSTON & BIRD UNDER RULE 2004

Skyline Advanced Technology Services ("Skyline"), the movant under a motion (the "Motion") seeking an order allowing it to obtain discovery from Alston & Bird LLP ("A&B") submits this reply to Creditor Alston & Bird's Objection Under Local Rule 9013-1(f) to Skyline's Motion Under Rules 2004 and 9014 (Dkt. No. 44) (the "Objection").

### I. RELEVANT BACKGROUND

Skyline filed the Motion on December 9, 2024, seeking an order under Rule 2004 permitting it to obtain discovery from A&B.[1] A&B filed the Objection on December 16, 2024, and the Court permitted Skyline to file this reply.

The Objection and the oral argument presented at the initial presentation of the Motion focused almost exclusively on whether Skyline was seeking the production of privileged communications between A&B and the Debtor. It was not and will not; the Objection is misplaced.

---

[1] It should be noted that the entity from which Skyline was seeking authority to obtain discovery was the law firm, not Chaka Patterson, a lawyer at that firm. Although Skyline reserves the right to seek discovery from Mr. Patterson, the Motion was served on A&B as an entity and the complaints in the Objection about service are inapposite.

At that initial hearing, Mr. Patterson stated that A&B had produced documents to Skyline. That was false. Skyline has never requested any documents from A&B. It could not have done so anyway, absent an order authorizing that under Rule 2004. Skyline has obtained an order allowing the issuance of subpoenas to the Debtor, and the Debtor has produced certain heavily-redacted documents, including documents relating to her fee arrangement with A&B.

A&B has also complained that Skyline is seeking confidential communications that are protected by the attorney/client privilege. This is also inaccurate.

Compounding its error, A&B also asserted in the Objection that, "It is also worth noting that, since filing bankruptcy, attorneys' fees incurred by [A&B] on behalf of [the Debtor] have been approved by this Court. (Dkt. 28)." Objection at 4, fn. 1. This assertion was flatly false. The Court has not "approved" "the attorneys' fees incurred by [A&B]." Only the payment of a retainer for A&B's representation of Debtor in two appeals was approved. The fees to be applied against that retainer were *not* approved by the Court.

## II. ARGUMENT

### A. The Objection is Premature.

A&B's Objection is premature. A motion seeking information under Rule 2004 is nothing more than a request that the Court allow subpoenas to be issued. Skyline has not requested a single document or a minute of examination from A&B at this point. It is merely seeking the right to issue subpoenas. When it does issue its subpoenas, A&B will be entitled to object to the production of documents or testimony under Fed. R. Bankr. P. 9016. In the matter before this Court, A&B's Objection asks the Court to rule in a vacuum – essentially demanding an advisory opinion from the Court before any Rule 2004 discovery has been initiated against it.

In a nearly identical procedural dispute in this Bankruptcy Court, Judge David Cleary granted, over objection, a motion that sought authorization to issue subpoenas to the debtors under Rule 2004. In *In re Velsicol Chem., LLC,* 2024 Bankr. LEXIS 478 (Bankr. N.D. Ill.), the motion was opposed by the party against which the discovery would be sought, but the subpoenas, themselves, had not been served on the objector, nor could they have been without an order granting that right under Rule 2004 having been entered.

The court overruled the opposition, which was based on objections to several document requests that had been attached to the Rule 2004 motion as exhibits, stating that, "[t]o the extent the Debtors wish to object to particular questions or document requests, the court can address these objections when raised at the appropriate time in accordance with the applicable rules. As the court explained on January 3, 2024, these types of issues 'are better resolved in the context of an actual dispute after the subpoenas are issued.' Debtors' specific objections are not well-taken in the context of deciding whether to grant authority to take examinations and seek documents under Rule 2004." *Velsicol* at *13-14.

That court went on to explain that "a request under Rule 2004 is not the appropriate setting for the court to parse specific document requests and determine which are likely to produce relevant information and which are not. 'The rule contemplates only that the court may order the examination of any entity. That entity's cooperation in the examination process is then secured with a subpoena, issued under Rule 45 of the Federal Rules of Civil Procedure. If the examinee thinks that the subpoena is inappropriate, it may take advantage of the procedures outlined there.' [*quoting In re Sheetz*, 452 B.R. 746, 748-49 (Bankr. N.D. Ind. 2011) (citations omitted).]"

The Bankruptcy Court for the Western District of Kentucky agreed with that proposition in August of this year, citing *Velsicol*. "In *Velsicol*, the court stated that a motion for leave to take a Rule 2004 Examination is not the time for the court to take a deep dive into the documents supporting the request or for the court to consider whose explanations of the documents are more plausible. Similarly, this Court need not make such a deep dive into the reasoning for Debtor's request for the City's Rule 2004 Examination." *In re Insight Terminal Sols., LLC*, 2024 Bankr. LEXIS 1989 at *8-9 (Bankr. W.D. Ky.)

The effect of this Court's order granting Skyline's motion will not be to require A&B to produce specific documents or designate anyone to sit for a deposition. Indeed, no documents have been requested yet. The proposed order would simply enable Skyline to take discovery under the rules. It would also, permit A&B to object to discovery under those same rules.

### B. The Request is for Discovery is Justified.

Skyline's request for Rule 2004 authority is amply justified as set forth in the Motion. But since the filing of the Motion, A&B has buttressed Skyline's argument. On the very day Skyline appeared in this Court to present the Motion, its undersigned counsel received from Mr. Patterson a copy of an engagement letter dated September 12, 2022, for A&B's representation of the Debtor in the damages trial with Skyline. This engagement agreement had been subpoenaed by Skyline several months ago from the Debtor, but was not produced. It is attached hereto as Exhibit A. The letter was heavily redacted, but it contained the following passage. "We have agreed to handle this matter *for a fixed fee of $100,000*. The parties agree to revisit this fixed fee if circumstances change…. *In no event will you be responsible for any fees or expenses in excess of $100,000.*" Ex. A at 1 [emphasis added].

4

Mr. Patterson copied the Debtor's bankruptcy counsel, Justin Storer with his December 18 email and the attachments. When Skyline's counsel asked by email to speak with him about this development, Mr. Storer's emailed response made clear that he had not previously seen the fixed fee engagement agreement. The only engagement agreement for the damages trial provided by Mr. Storer on the Debtor's behalf was dated March 8, 2024, more than a month after the damages trial concluded.

Skyline's desire to obtain discovery from A&B was based in large part on the dubiousness of A&B's claim in this case in the amount of $1.2 million. Strikingly, its prepetition agreement with the Debtor was limited to a flat fee of less than 10% of that amount. While the engagement letter left open the possibility that the fee arrangement could be modified "if circumstances change," it seems very likely that was intended to relate to a scenario where the case quickly settled without substantial commitment of resources by A&B, particularly because the agreement unequivocally states that "in no event" will the Debtor be responsible for more than $100,000.00 in fees and expenses. But it also loudly begs the question of how and why the circumstances changed by roughly ***twelve thousand percent.*** If that disclosure does not warrant examination of a creditor's claim by a competing creditor, it is difficult to conceive of a more justified request.

Moreover, as argued in the Motion, Bankruptcy Code Section 502(b)(4) endorses a hindsight examination of attorneys' fee arrangements in order to protect the integrity of the system – attorneys being perfectly situated to unfairly "assist" a debtor in prosecuting its case, whether by diluting the value of the claims of other creditors or in some other way. Skyline does not know whether that is the case with A&B's claim, but Exhibit A makes the inquiry even more essential.

Finally, the Debtor's Chapter 13 plan may only be confirmed if "the plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). The Debtor listed A&B in her schedules filed on June 5, 2024 [Dkt. 12], as having a liquidated, non-contingent, undisputed claim of $1.2 million. If the A&B claim has been scheduled by the Debtor or filed by A&B inappropriately, both of which were under oath, other creditors and the Chapter 13 Trustee would have a solid basis for objecting to the plan.

### C. Attorneys' Fees Information is Not Privileged.

At the initial presentation of the Motion, A&B argued and the Court expressed its concern over whether the discovery sought by Skyline would invade the attorney/client privilege. As argued above, Skyline has not requested one document or a minute's testimony from A&B, so a debate over the production of a document or witness subject to privilege is not ripe.

Were this Court to grant the Motion and Skyline then served a subpoena on A&B, Skyline is committed to inquiring into *only non-privileged information*. It will participate in consultations with A&B with the goal of securing reasonable compliance with its subpoena and Skyline accepts the Court's suggestion that *in camera* review by a different judge of this Court would be helpful should differences arise. But the point of this reply is that those disputes have not yet arisen, and cutting off the possibility of discovering non-privileged, relevant information before any specific information has been requested is unfair to Skyline and prejudicial to the other creditors of this estate.

To the extent that the question of the non-privileged nature of attorneys' fees information arises once Skyline's subpoena is issued and served, Skyline reserves the right to argue the merits of its requests. But that should not be necessary as Skyline does not intend to request

6

privileged communications and it is settled law that the fact that an attorney billed a client for fees or a retainer and whether the client paid the attorney and how much are not privileged communications.

Without waiving its right to address this issue when and if it arises, the law is clear on the following point. Blanket assertions of privilege are not permitted. "[T]he party must supply the court with sufficient information from which it could reasonably conclude that the communication: (1) concerned the seeking of legal advice; (2) was between a client and an attorney acting in his professional capacity; (3) was related to legal matters; and (4) is at the client's instance permanently protected." *FTC v. Shaffner,* 626 F.2d 32, 37 (7th Cir. 1980).

Once that burden is met, the Seventh Circuit's definition of what constitutes privileged communications is based on the well-known formulation from Wigmore on Evidence. "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." *United States v. White,* 950 F.2d 426, 430 (7th Cir. 1991).

Under that definition, attorney fee information is not privileged confidential communication. *See, e.g., In re Word of Faith Fellowship,* 1996 Bankr. LEXIS 579 (Bankr. N.D. Ill.) (Squires, J.); *Coyle v. Coyle,* 538 B.R. 753 (Bankr. C.D. Ill. 2015).

## III. CONCLUSION

For the foregoing reasons, Skyline urges the Court to overrule the Objection and grant the Motion.

Respectfully submitted,

Skyline Advanced Technology Services,

By: _____
One of its attorneys

David A. Newby
Momkus LLP
1001 Warrenville Rd., Ste. 500
Lisle, IL  60532 / (630) 434-0400
dnewby@momkus.com

# ALSTON & BIRD

560 Mission Street, Suite 2100
San Francisco, CA 941050912
415-243-1000 | Fax: 415-243-1001

Chaka M. Patterson　　　　　　Direct Dial:415-243-1025　　Email: chaka.patterson@alston.com

September 12, 2022

**VIA EMAIL**
Sabrina Shafer
447 Drury Lane
Barrington, IL 60010

Re:　Legal Assistance for Sabrina Shafer in the matter of *Skyline Advanced Technology Services v. Sabrina Shafer, 18 CV 06641*

Dear Sabrina:

Alston & Bird has agreed to help you with the above captioned lawsuit. This letter confirms the terms of our agreement.

*Scope of Legal Assistance.*

[redacted]

*Conditions for Legal Assistance.*

[redacted]

*Legal Fees and Expenses.*
We understand that you will be paying our fees and costs. We have agreed to handle this matter for a fixed fee of $100,000. The parties agree to revisit this fixed fee if circumstances change. You will provide a retainer of $76,000 upon signing this engagement letter. Throughout the period of this engagement, we will prepare monthly statements for our legal services rendered in the previous month to you. Each statement will contain a summary description of legal services for the period covered by the statement.

Alston & Bird LLP　　　　　　　　　　　　　　　　　　　　　　　　www.alston.com

Atlanta | Beijing | Brussels | Charlotte | Dallas | Los Angeles | New York | Research Triangle | San Francisco | Silicon Valley | Washington, D.C.

**EXHIBIT A**

Sabrina Shafer
September 12, 2022
Page 2

In addition to legal fees, the statements will include charges for related expenses and services to the extent required by this particular assignment. If our time and expenses amount to less than the $76,000 retainer, we will refund to you the difference. If our fees and expenses exceed the retainer, you agree to pay the difference up to $100,000. In no event will you be responsible for any fees or expenses above $100,000. You can wire the $76,000 retainer to the following:

| | |
|---|---|
| Bank: | Wells Fargo Bank |
| Address: | 420 Montgomery<br>San Francisco, CA |
| ABA Routing No.: | 121 000 248 for wire transfers |
| | OR |
| | 122 287 170 for ACH transfers |
| Swift Code:<br>(International Wires only) | WFBIUS6S |
| Account Name: | Alston & Bird LLP California IOLTA Account |
| Account No.: | 20000 4068 3595 |
| Reference: | Alston & Bird client/matter number or attorney contact at A&B |

*Waiver of Future Conflicts.*
You are aware that we are a large law firm and represent many other clients. It is possible that during the time we are representing you, another client of ours may have a dispute with you. You agree that during the period of this engagement we will not be prevented from representing clients in other matters adverse to you, so long as (1) those other matters are not substantially related to our work for you on this legal issue, and (2) we do not know confidential information from our work for you that could be used to your material disadvantage in the other matters. You acknowledge that before agreeing to this waiver, you have had the opportunity, if you chose, to discuss this waiver with independent counsel.

*File Retention*
Except to the extent that files are returned to you earlier, it is our current policy to retain files relating to an engagement for seven (7) years following the conclusion of the engagement. At our discretion, we may retain the files in either hard copy or electronic format. During the time that we retain the files following the completion of our engagement, you may request that we assemble and return to you those files to which you are entitled, with the costs and fees of that task to be paid by you. We retain the right to retain copies of all files. If, at the end of seven (7) years you have not requested the return of those files, you are giving us permission to destroy those files without further notice to you.

Alston & Bird LLP www.alston.com

Atlanta | Beijing | Brussels | Charlotte | Dallas | Los Angeles | New York | Research Triangle | San Francisco | Silicon Valley | Washington, D.C.

Sabrina Shafer
September 12, 2022
Page 3

*End of Representation.*
It is your right to end our relationship at any time by giving us notice in writing. We also reserve the right to end our representation of you at any time by giving you written notice if (1) you do not comply with the conditions for legal assistance described above, (2) there is a breakdown of the mutual respect and confidence that is critical to the attorney-client relationship, or (3) circumstances arise under which we are required or permitted to withdraw under the applicable Rules of Professional Conduct.

If you have any questions regarding this letter or our engagement as your counsel, please call or e-mail me. If you do not send any questions or comments, we will proceed with the understanding that you agree to the terms of this letter. We look forward to working with you on this matter.

Very truly yours,

*Chaka Patterson*

Chaka M. Patterson
Alston & Bird LLP

_____
Sabrina Shafer

Alston & Bird LLP                                                                                    www.alston.com

Atlanta | Beijing | Brussels | Charlotte | Dallas | Los Angeles | New York | Research Triangle | San Francisco | Silicon Valley | Washington, D.C