# EXHIBIT B

```
              IN THE UNITED STATES BANKRUPTCY COURT
             FOR THE NORTHERN DISTRICT OF ILLINOIS
                        EASTERN DIVISION




SABRINA SHAFER,            )      No. 24 B 07714
                           )
                           )      Chicago, Illinois
                           )      9:15 a.m.
                 Debtor.)         December 18, 2024




        TRANSCRIPT OF ZOOM PROCEEDINGS BEFORE THE
               HONORABLE DEBRA L. THORNE




APPEARANCES:

For the Debtor:                   Mr. Justin R. Storer;

For Skyline Advanced
 Technology Services:             Mr. David A. Newby;

For Alston & Bird, LLP:           Mr. Chaka Patterson;







Prepared by:                      Jerri Estelle, CSR, RPR
                                  U.S. Courthouse
                                  219 South Dearborn
                                  Room 661
                                  Chicago, IL  60604.
```

2

1        THE CLERK:  Line number two.  Sabrina
2   Shafer.
3        MR. NEWBY:  Good morning, Your Honor.
4   David Newby on behalf of Skyline Advanced Technology
5   Services.
6        THE COURT:  Good morning.
7        MR. PATTERSON:  Good morning, Your
8   Honor.  Chaka, C-h-a-k-a; Patterson,
9   P-a-t-t-e-r-s-o-n, on behalf of Alston, A-l-s-t-o-n &
10  Bird, B-i-r-d.
11       THE COURT:  Thank you.  Good morning.
12       MR. PATTERSON:  Good morning.
13       MR. STORER:  And good morning, your
14  Honor.  Justin Storer on behalf of Ms. Shafer, the
15  debtor.
16       THE COURT:  Good morning.  So I'm
17  happy to hear the arguments of the parties.
18       Or if you really want to brief this, I
19  read what's been filed, and I'm somewhat at a loss to
20  figure out how this would be -- this 2004 exam will
21  be taken without violating -- or going into
22  attorney/client privilege.
23       I mean, I suppose you could take it,
24  and if there are answers that are not violative
25  attorney/client privilege, you could have that

1  information.  But I feel like you're walking into a
2  den of lots of problems.
3              Mr. Newby.
4              MR. NEWBY:  We twice offered to work
5  with Alston & Bird to make sure that the privilege
6  was preserved.  We did it once in writing, and the
7  motion itself said that we recognize that there could
8  be privileged communications and that we want to
9  avoid that, and then on the phone offered to work
10 with Alston & Bird on that issue so they could
11 preserve their client's privilege.
12              What we're looking at, quite frankly,
13 is the ability of the debtor to confirm and to
14 perform her plan.  It doesn't depend -- that doesn't
15 depend on whether there's privileged communications.
16 We're really looking at the attorney's fees, the
17 billing.
18              And that's -- there's a raft of cases
19 that say that that's not necessarily attorney/client
20 privileged communications; we're just talking about
21 the money here, really, what's the amount of the
22 claim and what's it based on.  So I'm happy to limit
23 it.
24              And beyond that 2004 simply is a, you
25 know, a gating rule.  I have to issue a subpoena --

```
 1  if the Court agrees and grants my order for a 2004
 2  exam, I have to draft a subpoena and serve it, and
 3  the subpoena can be objected to on what --
 4              THE COURT:  Let me just --
 5              MR. NEWBY:  -- is appropriate.
 6              THE COURT:  Maybe I'm the last person
 7  to this game, but I see Alston Bird has filed a claim
 8  for a million two hundred twenty some thousand
 9  dollars.
10              Now, Mr. Storer, are you filing an
11  objection to that claim?
12              MR. STORER:  I have no plans to do so
13  at this time, Your Honor.  We are mindful, of course,
14  of our duties as Ms. Shafer's counsel in this
15  bankruptcy case to evaluate the claims of all
16  creditors.
17              You know, we are -- we've been in
18  contact with Mr. Patterson and his team about some of
19  the questions that we've seen in billing statements,
20  and they have been, you know, responsive to us.
21              I would also note that Ms. Shafer's
22  case is -- her plan payment is more or less premised
23  on the liquidation analysis, and she's performing
24  under her plan.
25              And even if Alston Bird's claims were
```

one-tenth of what it actually is, her plan payment would still be what her current plan payment is. I'm just not drawing the connection between the value of this creditor's claim and the feasibility of Ms. Shafer's plan.

THE COURT: Well, let's let Alston & Bird reply.

MR. PATTERSON: Thank you, Your Honor.

We're where you are. We understand that 2004 is a fishing expedition, but Skyline is trying to fish restricted waters and trying to get fish that they are not entitled to have.

At the end of the day, there's ongoing litigation --

THE COURT: Right.

MR. PATTERSON: -- between Skyline and Ms. Shafer.

We have a fully briefed appeal in the Ninth Circuit. We have an argument date for March. And so for all we know, the Ninth Circuit may very well reverse this matter, send it back to the district court, where we will again be relitigating certain matters, all of which are reflected in our billing invoices.

That said, we did try to cooperate

6

1  with Mr. Newby.  We gave him -- and this is the thing
2  that he left out of his motion.  He has our billing
3  records.  He has our engagement letter.
4              What's happened is, we've heavily
5  redacted them because of the attorney/client
6  privilege and work product protections that the Court
7  identified.
8              So the issue here is, Mr. Newby is
9  unhappy with what we have presented to him, and so
10 then he has made his motion, knowing full well that
11 with ongoing litigation between the parties, it is
12 almost impossible, as the Court noted, to do a 2004
13 examination without invading the attorney/client
14 privilege and work-product protections.
15             THE COURT:  Isn't this really -- I
16 mean, there's a two-party dispute that's here that
17 sounds like it's squarely before the Ninth Circuit,
18 which is going to determine not only Skyline's claim,
19 I assume.
20             I mean, I just -- Mr. Newby, I'm just
21 not sure where you're going with this.  What is it
22 that you don't have that you want to even examine?
23             And as we all know, everybody here
24 knows it is a fishing expedition, but a fishing
25 expedition going into attorney/client privilege is

1  going to be very difficult, at least in my view, and
2  I've been around a long time.
3              MR. NEWBY:  Let me correct one thing
4  that was just said on the record.  Alston & Bird
5  hasn't given us one scrap of paper.
6              When Mr. Patterson said he's provided
7  us with the engagement letter, that's just untrue.
8  We have gotten some production from the debtor, and
9  that includes some of the Aslton & Bird material,
10 like the invoices that have been redacted to the
11 point of ridiculousness.
12             Let me give you an example.  There are
13 entries for Mr. Patterson at over $1,000 an hour that
14 are seven hours even, every single day, or every few
15 days.  And some of the redactions are just a word.
16 That's it, a word.
17             Now, there's no way that we believe
18 that that would be a good-faith redaction.  We think
19 that there is an effort to hide what the true claim
20 is.
21             Quite frankly, the 2004 motion that we
22 filed we didn't have to file.  We could have
23 simply -- creditors can object to each other's
24 claims.
25             THE COURT:  I guess that's my next

1 question is why don't we just do this, do a claim
2 objection whenever that's appropriate?  I mean, that
3 seems like something that I could -- I mean,
4 certainly, let Alston & Bird respond, and you can
5 reply, and I can deal with that.
6               I'm not -- I just -- and I can
7 understand.  Certainly, a creditor or the debtor can
8 object to a claim saying there's not sufficient
9 information.
10               Now, again, I don't think Alston &
11 Bird or -- or you, for example, would have the duty
12 to review litigation strategy, certainly if every
13 claim -- every day has seven hours at whatever the
14 hourly rate is; maybe that doesn't seem -- that seems
15 strange.
16               But, you know, let's -- this is what I
17 -- I have a couple things I have to suggest.
18               One, if you have -- if Alston Bird
19 hasn't truly given you the support for the claim, and
20 I think it should be in a redacted version because
21 you guys have ongoing litigation, and I'm not going
22 to require any counsel to reveal their litigation
23 strategy, but the other way I could handle this would
24 be to suggest that once there is a claim objection,
25 and I think this is where this belongs, that one of

9

1 my colleagues, either here in Chicago or elsewhere
2 could perhaps mediate, and they could look at it in
3 camera, so to speak.
4 　　　　　　And I have -- you know, we're down
5 judges here, but there are judges, very good judges
6 around the country who would take something like this
7 on, and you can do it virtually, by Zoom.
8 　　　　　　MR. PATTERSON:  We'd be very
9 comfortable with that latter suggestion, Your Honor.
10 　　　　　　THE COURT:  Mr. Newby, does that seem
11 -- would that work for you?  I mean, understanding
12 you say you haven't received what you need to
13 receive?
14 　　　　　　Then I'm going to continue this matter
15 to January so that you can make sure that Mr. Newby
16 has redacted time entries, or however you're going to
17 handle it.
18 　　　　　　I think we can now say that Alston
19 Bird has been served, even though it was an odd way
20 to serve them, but I -- we can all live with that.
21 Let's move on beyond that.
22 　　　　　　Why don't I continue this to either
23 January 8th or 5th?  You can pick.  I'll be here all
24 of January.
25 　　　　　　We have --

10

1        MR. NEWBY:  Well, to be fair --
2        THE COURT:  Pardon me?
3        MR. NEWBY:  My apologies.
4        THE COURT:  Go ahead, Mr. Newby.
5        MR. NEWBY:  To be fair, we haven't
6  asked Alston & Bird for anything.  That's why they
7  haven't produced anything.  These all came from the
8  debtor.  We haven't asked Alston & Bird for anything.
9        We filed a motion for a 2004 exam,
10 which then would generate a subpoena, which would
11 then ask for documents and so on.
12       THE COURT:  Doesn't sound like Alston
13 Bird's opposed to giving you time records.
14       MR. PATTERSON:  We're not.  In fact,
15 what happened, Judge, is Mr. Storer reached out with
16 the request that Mr. Newby had served on Ms. Shafer,
17 and those -- based on those requests, we sent the
18 redacted time entries and the redacted engagement
19 letter to Mr. Storer, who then provided them to
20 Mr. Newby.
21       THE COURT:  So if you got these from
22 Mr. Storer, what are you missing?
23       MR. NEWBY:  Okay.  The redactions are
24 of everything, basically.  It does not fairly protect
25 attorney/client privileged communications.

1    We said this in the 2004 motion, but
2  329 makes attorneys, prepetition attorneys for the
3  debtor, subject to special rules, because you can
4  hide money with your prepetition nonbankruptcy
5  attorney or bankruptcy attorney, because you can
6  create a claim designed to make other claims receive
7  less if there is an inherent -- and the Code
8  recognizes this.  It doesn't -- 329 doesn't talk
9  about money that you paid your dentist.  It talks
10 about attorneys.
11            Attorneys are uniquely positioned to
12 assist a client in hiding things, whether that is
13 money paid to the attorney, whether that is creating
14 a claim on behalf of the attorney that would swamp
15 other claims.
16            So, I mean, this is more than just an
17 objection to a claim.  It could be a 329 matter.
18            Again, I don't have the ability to
19 file that today, or to even suggest it, but 329
20 exists for a reason.
21            I do know that we have received from
22 Ms. Shafer some documents, including an engagement
23 letter that was probably 67 percent redacted, which
24 doesn't make any sense.  I don't -- I mean, I write
25 engagement letters all the time, and I don't put

```
 1  attorney/client privileged communications in them.
 2              The invoices, again, are almost
 3  thoroughly redacted to the point where we can't even
 4  tell what was being addressed, regardless of
 5  communications.
 6              It just -- we would like to ask --
 7              THE COURT:  I'm trying to find out --
 8              MR. NEWBY:  -- Alston & Bird about
 9  their claim.
10              THE COURT:  -- Mr. Newby -- I guess
11  that's where I'm confused.
12              What is your goal here?  And then I'm
13  going to probably -- if you want to -- I mean, I just
14  don't know if this merits extensive briefing, but if
15  you want to do it, I'll let you respond to the --
16  Alston & Bird has certainly responded in their
17  objection.  I'll let you reply to that if you'd like.
18              But I guess if you are, you need to
19  explain to me what it is you're looking at.  Are you
20  just -- this amount of money is way too much; you
21  don't like their hourly rate?  I don't know what it
22  is, but -- and if the redactions are too heavy, I
23  don't think that I should be the one to -- I'm the
24  trial attorney here, and I think this is something
25  that somebody who's not the trial attorney should
```

1  look at if there are ways to work through the
2  redactions if they're too extensive.
3              But I know when I wrote time entries
4  as a lawyer, and I also wrote a lot of engagement
5  letters, and I dealt with attorney/client privilege
6  issues, I -- you know, two goals here, one -- if
7  you're in the land of bankruptcy, one, if you're
8  sending an invoice to your client, you want your
9  client to know what the heck you did, so you're
10 specific because you're charging hours, and they're
11 entitled to know what you did.
12             On the other hand, if those time
13 entries end up going to the other side, you've now
14 revealed litigation strategy, which I don't think is
15 appropriate.
16             There may be some middle ground here.
17 There may be verbs and things that can be in.  But if
18 it says "research on," then I would redact what the
19 research was.
20             MR. PATTERSON:  And that's exactly --
21             THE COURT:  But, certainly, "research"
22 is fair to say.  And I don't think -- I mean, if they
23 did redact the word "research," that's not necessary.
24             But I'm willing to let the parties
25 talk a little bit more, file a -- I think the thing

1  to do so that I don't fill up the rest of my call
2  today is to let you, Mr. Newby, file a reply to the
3  objection, and I can continue this matter to the
4  15th.
5              If you can file your reply by the end
6  of the year, I can review it, and we can continue
7  this matter to the 15th, if that works for
8  everybody.
9              MR. NEWBY:  Thank you, Your Honor.
10 We'll do so.  Let's see.  That would be, what, the
11 31st, and then a hearing on the 8th?  Is that --
12             THE COURT:  No, the 15th I'm going
13 to be out of town.
14             But, you know, the thing I think you
15 both should also think about, and I would encourage
16 you to talk.  If this is -- if we're not going to
17 make any progress, and you're feeling, Mr. Newby, is
18 the redactions are just too heavy, and Mr. Patterson
19 says, no, they're not, then I would suggest strongly
20 that we have another judge take a look at them in
21 camera or something and work through it.
22             Like I say, if this is an objection, I
23 want to hear -- I don't think judges should be
24 settlement judges for their own matters, so I would
25 reach out to either my colleagues here or colleagues

1  elsewhere to take a look at it.
2              And I have some colleagues here I
3  think would be very valuable in this, because they've
4  also practiced, and they would have a good
5  sensitivity for what attorney/client privilege might
6  be on the --
7              MR. PATTERSON:  We're very comfortable
8  with your earlier suggestion that all of this sounds
9  more like a claim objection, and once Mr. Newby files
10 his claim objection, we would be more than happy to
11 meet with one of your colleagues in a mediation and
12 work through the redactions, work through the
13 amounts, all those things, and see if we can't
14 resolve this between the creditors and not take up
15 any more of the Court's time.
16             THE COURT:  Mr. Newby, what's your
17 thought on that?
18             MR. NEWBY:  I prefer what the Court
19 suggested originally, that we file our reply in
20 support, and if we can't work it out in the meantime,
21 that we take the Court up on its offer to allow this
22 to be reviewed by a -- you know, the judge that's not
23 trying the case, and go forward with the 2004.
24             THE COURT:  I guess what my ultimate
25 question is going to be is what do you need in the

1  2004?
2              If you got to redacted time entries
3  from Mr. Patterson, what's the 2004 on?  I mean,
4  because it's going to -- I assume, and I may be
5  jumping to conclusions -- that it's going to be on
6  what's the redacted stuff.
7              If that's what --
8              MR. NEWBY:  It may not --
9              THE COURT:  If that's what's involved,
10 I'm really hesitant to say go for it, because I can
11 only imagine it's going to be one objection after
12 another, and you're not going to get anywhere.  I
13 mean, maybe you'll get something, but -- so --
14             MR. NEWBY:  It may not even involve a
15 live examination.  It may be just for documents.  I
16 don't know that until we get compliance with the
17 subpoena, which we haven't even drafted yet, so...
18             THE COURT:  Mr. Patterson's sayings
19 he's willing to turn over their invoices in a
20 redacted form.
21             MR. NEWBY:  It should be pursuant to a
22 subpoena, then I --
23             THE COURT:  He's voluntarily --
24             MR. NEWBY:  -- haven't asked him.
25             THE COURT:  -- doing it.

17

1              MR. PATTERSON:  We're voluntarily
2    doing it.
3              THE COURT:  He's voluntarily doing it.
4    I don't know why -- I mean, what's the -- if somebody
5    says "here's the stuff," what do you need a subpoena
6    for?
7              MR. NEWBY:  Because if we disagree
8    that that's the stuff, we want to be able to enforce
9    it in front of Your Honor.  That's what a subpoena
10   would -- I mean --
11             THE COURT:  This is how we're going to
12   proceed.
13             Mr. Patterson is going to turn over
14   redacted invoices on or before -- maybe do it before
15   the end of next week.  I know it's Christmas.
16             MR. PATTERSON:  Yes.
17             THE COURT:  I assume that it's
18   something electronic, and you have's already
19   redacted.
20             MR. PATTERSON:  No problem, Your
21   Honor.  We'll take care of it this week.
22             THE COURT:  Okay, so this week.  So by
23   the 20th of this month, which is on Friday, you will
24   have redacted invoices via e-mail, and I would -- Mr.
25   Storer would already have them, but make sure he's

```
                                                          18
 1   copied.
 2              MR. NEWBY:  Understood.
 3              THE COURT:  Then, Mr. Newby, you have
 4   a chance to review those.  If -- and you can file a
 5   response to the objection to the 2004.  But in that,
 6   I would certainly want to know what's the other stuff
 7   you need to look at this claim.
 8              MR. NEWBY:  Understood.
 9              THE COURT:  And then we'll have a
10   status on the 15th.  Hopefully, the parties have
11   worked it out, but if they haven't, I'm fully capable
12   of ruling.
13              MR. NEWBY:  And when is the reply --
14   if we are filing a reply --
15              THE COURT:  If you're going to file
16   something, file it on or before the 31st, and I
17   will call it on the 15th.
18              MR. PATTERSON:  Thank you, Your Honor.
19              MR. NEWBY:  Thank you, Your Honor.
20              MR. STORER:  Thank you.
21              (End of audio.)
22
23
24
25
```

```
                                                           19

 1                       CERTIFICATE

 2

 3              I, JERRI ESTELLE, CSR, do hereby

 4   certify that the foregoing is a true and accurate

 5   transcription of proceedings electronically recorded

 6   in the matter of SABRINA SHAFER, Case No. 24 B 07714,

 7   on December 18, 2024, submitted to D&E Reporting for

 8   transcription.  It contains all the content in said

 9   recording and has been transcribed to the best of my

10   ability.

11

12

13

14              Jerri Estelle, CSR /S/
                License Number:  084-003284
15

16

17

18

19

20

21

22

23

24

25
```