Form G-3 (20240417)

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION          DIVISION

In re: Sabrina Shafer,                                )   Chapter  13
                                                      )
                                                      )   No. 24-07714
                                                      )
          Debtor(s)                                   )   Judge  Deborah L. Thorne

## NOTICE OF MOTION

TO:  See attached list

        PLEASE TAKE NOTICE that on February 5, 2025 ___, at  9:15  a.m. , I will
appear before the Honorable Deborah L. Thorne ., or any judge sitting in that judge's
place, **either** in courtroom  682  of the Everett McKinley Dirksen United States Courthouse ,
219 S. Dearborn Street, Chicago, IL 60604   **or** electronically as described below, and
present the motion of Sabrina Shafer _____ [to/for]
Protective Order Clarifying that Bank Statement Redactions are Proper ., a copy of which is attached.

        **Important:  Only parties and their counsel may appear for presentment of the
motion electronically using Zoom for Government.  All others must appear in person.**

        **To appear by Zoom using the internet**, go to this link:  https://www.zoomgov.com/.
Then enter the meeting ID and passcode.

        **To appear by Zoom using a telephone**, call Zoom for Government at 1-669-254-5252
or 1-646-828-7666.  Then enter the meeting ID and passcode.

        **Meeting ID and passcode.**  The meeting ID for this hearing is  160 9362 1728 ,
and the passcode is  not required .  The meeting ID and passcode can also be found on
the judge's page on the court's web site.

        **If you object to this motion** and want it called on the presentment date above, you must
file a Notice of Objection no later than two (2) business days before that date. If a Notice of
Objection is timely filed, the motion will be called on the presentment date.  If no Notice of
Objection is timely filed, the court may grant the motion in advance without calling it.

                                        By: /s/ William J. Factor _____

                                            William J. Factor (6205675)
                                            Justin Storer (6293889)
                                            FACTORLAW
                                            105 W. Madison, Suite 2300
                                            Chicago, IL 60602
                                            Tel: (312) 878-6976

## <u>CERTIFICATE OF SERVICE</u>

I, William J. Factor _____ ,

☒ an attorney, certify

- or -

☐ a non-attorney, declare under penalty of perjury under the laws of the United States of America

that I served a copy of this notice and the attached motion on each entity shown on the attached list at the address shown and by the method shown on  January 28, 2025 _____ , at  5:00 ____  p.m.  *

/s/ William J. Factor _____
[Signature]

*All applicable boxes must be checked and all blanks filled in.

**Registrants**
(Service via CM/ECF)

| | |
|---|---|
| **Adam Brief** | Ustpregion11.es.ecf@usdoj.gov |
| **William J Factor** | wfactor@wfactorlaw.com; wfactorlaw@gmail.com; bsass@wfactorlaw.com; wfactor@ecf.courtdrive.com; wfactormyecfmail@gmail.com; factorwr43923@notify.bestcase.com |
| **Leib M Lerner** | leib.lerner@alston.com |
| **Marilyn O Marshall** | courtdocs@chi13.com |
| **David A. Newby** | dnewby@momkus.com; cbednarski@momkus.com |
| **Chaka M. Patterson** | chaka.patterson@alston.com |
| **Justin R. Storer** | jstorer@wfactorlaw.com; bsass@wfactorlaw.com; jstorer@ecf.courtdrive.com |

**IN THE UNITED STATES BANKRUPTCY COURT**
**THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| Sabrina Shafer, | ) | Case No. 24-07714 |
| | ) | |
| Debtor. | ) | Hon. Deborah L. Thorne |

**DEBTOR'S MOTION FOR PROTECTIVE ORDER CLARIFYING**
**THAT BANK STATEMENT REDACTIONS ARE PROPER**

Based on § 105 of the United States Bankruptcy Code (11 U.S.C. §§ 101, *et. seq.*, the "**Bankruptcy Code**") and Fed. R. Bankr. P. 9016, 9018 and 7026, Sabrina Shafer ("Ms. Shafer" or the "Debtor"), by and through counsel, respectfully asks the Court to enter a protective order precluding Skyline Advanced Technology Services ("**Skyline**") from using a Rule 2004 subpoena (the "**Subpoena**") to obtain sensitive and confidential information regarding the clients and vendors of Transformation Continuum ("**TC**"), a business partially owned by Ms. Shafer that competes with Skyline. In support of this motion, Ms. Shafer states as follows:

## INTRODUCTION

Ms. Shafer filed this Chapter 13 case to responsibly address approximately $2 million in debt stemming from tempestuous litigation driven by Skyline, her former employer. Her Chapter 13 plan represents a good-faith effort to meet her obligations to her creditors while rebuilding her life. Ms. Shafer's primary source of income arises from her employment with TC, a company she co-owns and founded after Skyline terminated her employment in 2018.

TC and Skyline are direct competitors in the business and technology consulting marketplace where they often vie for the same clients and vendors. Thus, when Skyline served the Subpoena requesting TC's general ledger and bank statements since 2020 (the "**Bank Statements**"), Ms. Shafer produced the documents but redacted the identities of the entities that received the payments TC made and that provided the revenue TC earned (the "**Redacted Data**"), leaving unredacted a very detailed account of TC's daily revenue and expenses since early 2020.

As discussed below, Ms. Shafer redacted the identity of TC's clients, vendors, contractors, and employees (the "**Commercial Information**") because exposing it, even to Skyline's attorneys, harms TC and Ms. Shafer. From Ms. Shafer's vantage point, the risk of harm is even more palpable because Skyline seems less concerned about a financial recovery and more focused on sending a message to a former employee and perhaps others. As detailed *infra*, this narrative is supported by Skyline's conduct during extensive litigation in the United States District Court for the Northern District of California (the "**California Court**"), which led to Skyline's judgment against Ms. Shafer.

Ms. Shafer understands and respects her obligations as a Chapter 13 debtor and has satisfied them -- including those that require her to provide information and documents relevant to confirmation of her plan and for calculating her projected disposable income. However, after multiple "meet and confers" between counsel for the parties failed to yield a consensual resolution of the impasse that arose when

Skyline continued demanding unredacted Bank Statements that would expose the Commercial Information to its counsel, Ms. Shafer concluded that a protective order was her only viable option.

A protective order is essential to protecting Ms. Shafer's ability to fund her Chapter 13 plan. It is a reasonable effort to balance the need for counsel to prepare its case with protecting the funding source for Ms. Shafer's plan and her fresh start. If the Court grants this motion, Skyline will still learn TC's revenue and expenses on a transaction-by-transaction basis. Skyline will thus have financial information to evaluate TC's viability and Ms. Shafer's ability to fund her Plan, while TC will not be exposed to the risk inherent in Skyline gaining access to TC's client and vendor base and the dire consequences that will follow if Skyline uses the Commercial Information to poach or damage the relationships that TC and Ms. Shafer have developed. Skyline's documented pattern of aggressive litigation tactics and hostility toward Ms. Shafer raises legitimate and well-founded concerns about Skyline's intended use of the Commercial Information.

Although Skyline is now willing to provide an attorney's eyes only ("**AEO**") designation on the Redacted Data, which would limit disclosure of the Commercial Information to Skyline's counsel, a protective order is still warranted. An AEO designation will not protect Ms. Shafer and TC from Skyline's counsel sending subpoenas or correspondence to TC's clients or vendors and seeking information from them, making disclosures to them or raising questions of them that will damage or interfere with the relationship between TC and its business partners and also provide

Skyline an inroad to poach business. As explained *infra,* Skyline has flouted confidentiality restrictions in the past and the risk of it doing so now juxtaposed against the damage that would ensue and the absence of a legitimate need for the Commercial Information, make the entry of the requested protective order a reasonable exercise of the Court's discretion.

## BACKGROUND.

I. **MS. SHAFER HAS FULFILLED ALL OF HER DISCOVERY OBLIGATIONS AND PRODUCING HIGHLY SENSITIVE INFORMATION THAT SKYLINE MAY USE TO STIFLE HER EFFORTS TO RESTART HER LIFE IS BOTH UNNECESSARY AND NOT APPROPRIATE.**

A. **SKYLINE SERVED A BROAD SUBPOENA REQUESTING COMMERCIAL INFORMATION, EVEN THOUGH IT HAS NO PROBATIVE VALUE.**

Ms. Shafer filed this case on May 23, 2024 (the "**Petition Date**"), the driving force being a judgment of $745,061.53 (the "**Skyline Judgment**") entered against her and in favor of Skyline after a trial before the California Court. The Skyline Judgment is under appeal to the United States Court of Appeals for the Ninth Circuit, with oral argument scheduled for March 3, 2025. If the Ninth Circuit reverses the Skyline Judgment, the matter could be remanded to the California Court for a new trial or other relief.

On July 17, 2024, Skyline obtained an order authorizing it to conduct a Rule 2004 examination of Ms. Shafer and entities she owns or controls, including Breaking Autism, Inc. and TC. Ms. Shafer founded Breaking Autism to help families dealing with autism understand and obtain available resources. She is the sole owner of

Breaking Autism. TC is a business Ms. Shafer co-founded after her employment with Skyline ended. She owns 51% of TC.

Skyline served an extensive Rule 2004 subpoena on Ms. Shafer, a copy of which is attached as **Exhibit 1.** The Subpoena requested voluminous information. Among other things, it requested financial information about TC and Breaking Autism, asking for granular information such as bank statements and general ledgers going back to February 2020.

On September 7, 2024, Ms. Shafer responded in full to the Subpoena and, through her attorneys, sent Skyline a Dropbox link to a fully responsive set of documents totaling 1,767 pages. In the 1,767 pages Ms. Shafer produced, she redacted the identity of TC's clients and vendors — i.e., the Commercial Information. Ms. Shafer has provided all information relevant to her companies' revenues and finances that responds to Skyline's requests 15-17.

Ms. Shafer redacted the Commercial Information to protect the third party's privacy and to ensure that Skyline does not use it for nefarious purposes, including (i) poaching clients from TC, (ii) poaching training personnel from TC, or (iii) inflicting reputational or other damage. Ms. Shafer was and remains concerned that Skyline will misuse the Commercial Information by contacting clients and other business associates, including those who provide training services to clients, either informally or through a subpoena, and undermine their relationship with Ms. Shafer, TC and Breaking Autism. The Commercial Information is also unnecessary to Skyline's interests in this bankruptcy action.

B.  **MS. SHAFER'S CONCERNS ABOUT SKYLINE'S MISUSE OF THE COMMERCIAL INFORMATION ARE WELL-FOUNDED.**

Ms. Shafer's concerns about Skyline's counsel having access to the Commercial Information are well-founded. Skyline is headquartered in California and offers information technology training and consulting services, primarily focused on businesses using the Cisco platform. Until September 2018, Ms. Shafer was a top salesperson for Skyline. She helped the company generate substantial revenue increases.

Eventually, the employment relationship between Ms. Shafer and Skyline soured, leading to Ms. Shafer's termination. Since the employment separation, Skyline has waged an all-out legal assault on Ms. Shafer. First, Skyline sued Ms. Shafer for, among other things, breach of contract and breach of duty of loyalty. *Skyline v. Shafer*, 3:18-cv-06641, ECF 1.

The evidence Skyline presented at trial in the California Court, over Ms. Shafer's objections, was long on lewdness and short on law -- over 30 of the 128 exhibits presented by Skyline at trial involved Ms. Shafer's intimate relationships. *Id*. at ECF 150.[1] After a bench trial, the California Court awarded Skyline $745,061.53, representing nearly the entire amount of compensation Skyline paid to Ms. Shafer during her employment. *Id*. at ECF 146.

Immediately following the trial, Skyline tried to file on the docket the trial exhibits containing Ms. Shafer's personal identifying information (PII), such as her

---

[1]. The California Court's admission of and reliance upon these exhibits forms the basis for Ms. Shafer's appeal to the Ninth Circuit.

home address, social security number, cell phone number, and personal email address. Skyline's conduct required Ms. Shafer to file an objection to keep her PII from being disclosed into the public record. *Id.* at ECF 149. In her objection, Ms. Shafer noted that, among other things, Skyline's actions violated the protective order in the case. *Id.* at p.6. The California Court granted Ms. Shafer's motion to redact her PII. *Id.* at ECF 151.

Skyline's attempt to disclose the PII was not its first effort to violate a protective order entered by the California Court. Before the trial, Skyline notified Ms. Shafer and the California Court that it intended to read Richard Wonders' deposition into the record at trial. Skyline intended to do so despite the existence of a protective order, requiring Skyline to notify Mr. Wonders if they intended to use his deposition in a public forum – a protective order to which Skyline agreed during the deposition of Mr. Wonders. Not only did Skyline fail to request Mr. Wonders' permission to use his deposition in a public forum, but Skyline's conduct forced Mr. Wonders to file a motion *in limine*. *Id.* at ECF 138. While the court denied Mr. Wonders' motion, Skyline's conduct ignored both the Wonders and Shafer protective orders, thus demonstrating a disdainful attitude toward confidentiality protections.

Skyline's overreaching is also evident from its decision to seek an award of costs approximately 100 times more than permitted by settled law. Specifically, Skyline initially sought costs of $54,631.05, *Id.* at ECF 152, and then reduced the request to $2,140.08. *Id.* at ECF 154. To guard against this baseless overreach, Ms. Shafer filed an objection, arguing that Skyline was entitled to $558.33, *Id.* at ECF

157, which is the exact amount the California Court awarded to Skyline. *Id.* at ECF
161. On the heels of that overreach, Skyline sought $467,853.17 in prejudgment
interest (*Id.* at ECF 155), requiring Ms. Shafer to file a response objecting to that
motion. *Id.* at ECF 162. The court denied Skyline's motion for prejudgment interest
in its entirety. *Id.* at ECF 167.

Skyline's lawfare against Ms. Shafer has continued in this Court. In its
motion for a rule 2004 examination, Skyline gratuitously assaulted Ms. Shafer's
professional and personal character. *In re Shafer*, 1:24-bk-7714, at Dkt. 26, p. 2.
Then Skyline sought a Rule 2004 examination of Alston & Bird, Ms. Shafer's
counsel in the Skyline-Shafer California litigation, to gain an unfair tactical
advantage by invading the attorney-client privilege. *Id.* At Dkt. 44. After briefing
and an in-court hearing, this Court denied that motion. *Id.* at Dkt. 53. Skyline
continues its legal assault against Ms. Shafer by requesting what amounts to TC's
entire client list, along with the scope of the work performed for those entities and
the identity of the professionals working for TC; i.e., the Commercial Information.
This request, like the rest of Skyline's conduct, represents yet another attempt by
Skyline to inappropriately and unnecessarily use legal process to inflict harm on
Ms. Shafer.

## II.   EFFORTS TO RESOLVE THIS LINGERING DISCOVERY ISSUE HAVE ONLY REINFORCED MS. SHAFER'S CONCERNS.

### A.   COUNSEL FOR MS. SHAFER AND SKYLINE HAVE MET AND CONFERRED MULTIPLE TIMES, TO NO AVAIL.

Since Ms. Shafer produced the responsive documents, including the redacted
Bank Statements, attorneys for Ms. Shafer and Skyline have exchanged numerous

emails and have met and conferred multiple times on various discovery issues. A brief

summary of these conferences includes:

- Counsel for each party conferenced about discovery on August 22, 2024.
- The parties held an additional discovery conference on August 30, 2024.
- The parties exchanged several emails throughout September 2024.
- The parties conducted a discovery compliance conference on October 15, 2024.
- The parties participated in another discovery conference on November 20, 2024.
- The parties exchanged emails throughout November 2024, December 2024, and January 2025, discussing issues related to discovery.

**B.    SKYLINE IS UNYIELDING IN ITS DEMAND FOR COMMERCIAL DATA, WHICH IS NOT PERTINENT AND NEEDS TO BE PROTECTED FROM DISCLOSURE TO SKYLINE AND ITS COUNSEL.**

Ms. Shafer and Skyline agreed on most discovery-related issues, including the

fact that no further documents need to be produced at this time. However, counsel for

Skyline remained firm in the request to learn the identity of TC's clients and other

business relationships when he wrote to Ms. Shafer's attorney that "we are

requesting that the financial information (bank statements, financial reports, etc.)

for [Shafer's current company] be produced in their entireties, without any

redactions." **Exhibit 2**. Admittedly, Skyline is willing to impose an attorneys' eyes-

only designation, but for the reasons discussed herein, that does not protect against

misuse of the information.

C.   **MS. SHAFER IS ENTITLED TO THE REQUESTED
PROTECTIVE ORDER AND SHOULD BE ABLE TO REDACT
THE COMMERCIAL INFORMATION.**

1.   **THE COMMERICAL INFORMATION IS PROTECTED BY
RULE 9018.**

Fed. R. Bank. P. 9018 provides that "[o]n motion or on its own, the court may,

with or without notice, issue any order that justice requires to: (1) protect the estate

or any entity regarding a trade secret or other confidential research, development, or

commercial information; …" Fed. R. Bank. P. 9018. *See also In re Handy Andy Home

Imp. Centers, Inc.*, 199 B.R. 376, 382 (Bankr. N.D. Ill. 1996). In *Handy Andy,* Judge

Katz thoroughly analyzed the standards for entering a protective order in the context

of a Rule 2004 examination. *Id.* at 376. His analysis evaluated Rule 9018, Rule 26(c)

and Bankruptcy Code § 107, and the burdens under each provision. *Id.*

Among other things, Judge Katz concluded that Rule 26(c) and its "good cause"

requirement did not govern the analysis in the context of a Rule 2004 examination.

*Id.* at 380. He reasoned that "while civil discovery and bankruptcy investigation

provisions seem parallel, they are not identical, and case law requiring a showing of

'good cause' for the entry of a protective order under Fed.R.Civ.P. 26(c) is inapplicable

to a Rule 2004 investigation." *Id.*

After concluding that § 107 of the Bankruptcy Code did not apply because the

requested items would not be filed on the docket, Judge Katz next considered

Bankruptcy Rule 9018. *Handy Andy*, 199 B.R. at 381 ("Section 107, however, is

inapplicable to this situation. Section 107 only applies to filed documents. In this

district, absent a court order, discovery materials may not be filed."). Like here, in

the *Handy Andy* case the materials in question involved "commercial information" and were thus within the precise scope of Rule 9018, which "is limited to documents containing commercial information." *Id.* "Commercial information is information which would give a competitor an unfair advantage." *Id. See also In re Orion Pictures Corp.*, 21 F.3d 24, 27, 30 (2nd Cir. 1994) (quoting *Ad Hoc Protective Committee for 10 1/2% Debenture Holders v. Itel Corp. (In re Itel Corp.)*, 17 B.R. 942, 944 (9th Cir. BAP 1982)) ("'Commercial information' has been defined as 'information which would cause an unfair advantage to competitors by providing them information as to the commercial operations of the debtor.'"). Courts also recognize that the scope of "commercial information" is broad, *In re Lomas Fin. Corp.*, No. 90 Civ. 7827 (LLS), 191 WL 21231, at *2 (S.D.N.Y. Feb. 11, 1991), and it need not be equivalent to a trade secret to be protected. *Orion Pictures*, 21 F.3d at 28.

The Commercial Information at issue here falls squarely within the protections of Rule 9018. Skyline would obtain a clear and definite competitive advantage if it learns the identity of those with whom TC conducts business. This information would enable Skyline to contact these entities and attempt to poach their business. Worse yet, Skyline's documented animus towards Ms. Shafer transforms the possibility that they might misuse the Commercial Information into a high likelihood of doing so. Likewise, Skyline learning the identities of TC's employees or independent contractors creates a high risk that Skyline will try to lure them away.

## 2.    THE AEO DESIGNATION DOES NOT OFFER ANY MEANINGFUL PROTECTIONS

Although an AEO designation can sometimes provide suitable protection, it does not in this case for at least three reasons. First, Skyline has a demonstrated propensity for ignoring legal constraints concerning information related to Ms. Shafer. This happened in the California litigation with respect to the Wonders and Shafer protective orders. Accordingly, disclosing the Commercial Information to counsel for Skyline is just the first step in its eventual misuse or dissemination by Skyline or a third party under its control. Concerns about Skyline's motives are heightened and well-founded by the fact that counsel knowing the identity of TC's vendors and clients over a four-year period does not help Skyline learn how much revenue TC earned and the expenses required to generate that revenue.

Second, as a small business owner with limited resources, Ms. Shafer would face significant challenges in pursuing any effective recourse if Skyline, a larger business entity, were to breach the AEO designation. Any breach of the AEO designation would create irreparable harm, as proving unauthorized contact or interference with TC's business relationships would be prohibitively difficult and costly to establish, especially given the complex nature of business relationships and the various ways they can be influenced or compromised. Business entities typically avoid involvement in third-party disputes due to potential business disruption and associated costs, making enforcement of protective orders through third-party testimony particularly challenging.

Finally, the AEO designation will not prevent counsel for Skyline from unnecessarily and unjustifiably using the Commercial Information to interfere with and undermine TC's business relationships through subpoenas or less formal inquiries to clients or service providers.

### 3.    MS. SHAFER MEETS THE CRITERIA FOR A PROTECTIVE ORDER UNDER RULE 9016.

Bankruptcy Rule 9016 makes Fed. R. Civ. P. 45 applicable in bankruptcy cases. Fed. R. Bank. P. 9016. Federal Rule 45(d)(3) specifically refers to the grounds under which a court order may modify a subpoena. Fed. R. Civ. P. 45(d)(3)(B). Specifically, "[t]o protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires: . . . disclosing a trade secret or other confidential research, development, or commercial information[.]" *Id*.

Similar to Rule 9018, Rule 45(d)(3)(B) gives Ms. Shafer an independent basis for a protective order. As detailed *supra*. the Commercial Information is "commercial information," and its disclosure to Skyline is very damaging to TC and Ms. Shafer.

### 4.    MS. SHAFER MEETS THE STANDARDS UNDER RULE 26(C).

In addition to satisfying the criteria for issuance of a protective order under Bankruptcy Rules 9018 and 9016, Ms. Shafer meets the good cause standard of Fed. R. Civ. P. 26(c), which provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Federal Rule 26(c)(1)(G) specifically

acknowledges that a protective order can be entered to prevent the revelation of "commercial information." Fed. R. Bank. P. 7026(c)(1)(G).

"The burden to show good cause is on the party seeking the order." *Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*, 235 F.R.D. 435, 440, 64 Fed. R. Serv. 3d 1052 (N.D. Ill. 2006) (citing *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir.1994)). The existence of a trade secret can demonstrate good cause for issuing a protective order. *In re Bank One Sec. Litig.*, 222 F.R.D. 582, 587–88 (N.D. Ill. 2004) (citing Leavell, 220 F.3d at 568.); *Gotham Holdings, LP v. Health Grades, Inc.*, 580 F.3d 664, 665 (7th Cir. 2009) ("Trade secrets, privileges, and statutes or rules requiring confidentiality must be respected, see Fed.R.Civ.P. 45(c)(3)(A)(iii), but litigants' preference for secrecy does not create a legal bar to disclosure.").

A trade secret is defined under the Illinois Trade Secret Act as:

> information, including but not limited to, technical or nontechnical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that:
>
> (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

If the party seeking the protective order meets the good cause burden, the court will then balance the need for disclosure against the potential harm to the party seeking protection. *Pfizer Inc. v. Apotex Inc.*, 744 F.Supp.2d 758 (2010)). For the reasons discussed above, Ms. Shafer submits she has demonstrated good cause to

protect the Commercial Information even under the more rigorous standard of Rule 26(c).

Further, when the Court balances the need for disclosure against the potential harm, Ms. Shafer respectfully submits that her careful decision to redact the Commercial Information should be sustained. Even if Skyline is seeking the Bank Statements to reconstruct or evaluate TC's profitability, knowing the identity of the entities that transact business with TC has no material relevance to that exercise. Conversely, requiring the disclosure of the Commercial Information to Skyline will substantially harm Ms. Shafer and TC, even if the disclosure is limited to counsel's eyes.

WHEREFORE, for all of the reasons set forth above, Debtor, Sabrina Shafer, respectfully requests the Court (a) enter an order protecting the identity of Ms. Shafer's customers and vendors by allowing for the redactions already provided by Ms. Shafer and clarifying that no further information is needed; and (b) award any such other and further relief that the Court deems reasonable and just.

Dated:  January 28, 2025

Respectfully submitted,

**SABRINA SHAFER**

*/s/  William J. Factor*
By:  One of Her Attorneys

William J. Factor (6205675)
Justin Storer (6293889)
**FACTORLAW**
105 W. Madison, Suite 2300
Chicago, IL 60602
Tel:     (312) 878-6976
Fax:     (847) 574-8233
Email: wfactor@wfactorlaw.com
           jstorer@wfactorlaw.com